OPINION
Appellant Ashley Arth appeals from the August 21, 2000, and October 10, 2000, Judgment Entries of the Tuscarawas County Court of Common Pleas, Juvenile Division.
 STATEMENT OF THE FACTS AND CASE
On May 21, 2000, appellant was cited for leaving the scene of an accident in violation of R.C. 4549.02[1] and R.C. 2151.021[2]. A written plea of denial was filed by appellant on June 22, 2000. Thereafter, an adjudicatory hearing was held on August 11, 2000. The following evidence was adduced at such hearing.
On May 21, 2000, Chris Adkins, who was twelve years old at the time of the hearing, was riding his bicycle when he was struck by a "purplish" colored vehicle. Transcript at 7. As a result of being struck, Chris was thrown off of his bicycle and into a creek. At the adjudicatory hearing, Chris testified that the vehicle then stopped and a woman with blonde hair exited the same. After Chris asked the woman to "go get my mom", the woman got back into her vehicle and drove away. Transcript at 8.
When Bruce Elliott, who lives nearby, stopped at the scene of the accident, he overheard a description of the vehicle allegedly involved in the accident. Elliott informed the troopers on the scene that he recognized the description of the vehicle, that he had seen the vehicle in the area ten or fifteen minutes before, and that "it was one of the Arth kids driving it." Transcript at 25. When the vehicle was located the same day at the home of appellant's father, there was damage to the front fender that had not been there earlier in the day. It is undisputed that appellant was operating the vehicle on the day in question and in the vicinity where the accident occurred.
When Trooper Mark Glennon of the Ohio State Highway Patrol spoke with appellant, appellant told him that "she does not remember colliding with a bike, but all she remembers is hearing a voice state, I want my mommy." Transcript at 38. After examining both Chris' bicycle and the vehicle driven by appellant, Trooper Lawrence Argentine of the Ohio State Highway Patrol determined that the damage to the bicycle and the damage to the vehicle matched. Trooper Argentine further testified that the bicycle foot pedal "had reddish purplish paint scrapes stuck in the pedal and the vehicle had scratch marks on the lower left side of the front fender" and that the paint marks on the pedal matched those of the vehicle. Transcript at 49.
Appellant testified at the hearing on her own behalf. Appellant testified that she did not recall any accident and that she never saw any damage to the vehicle. In addition, the following testimony was adduced during cross-examination of appellant:
 You told the Trooper that you remember a boy saying, I want my mommy.
 A. I told Mr. Glennon that I kept hearing that voice in my head. I never told him that I, when I drove by I heard that, and there would have been no way I would have heard it anyhow. I always drive with my music up, I wouldn't have heard anything.
 Q. What if you stopped your vehicle and got out, would you have heard it then?
A. If I would have stopped, possibly.
Q. Do you recall stopping?
A. No sir.
Q. Did you stop?
A. I don't remember stopping.
Q. You don't remember?
A. (Not Audible).
Q. You say that you heard that voice in your head?
A. Yes sir.
Q. Do you often hear voices in your head?
A. No Sir.
 Q. Do you have any idea why you would be hearing a boy's voice in your head saying, I want my mommy?
 A. Because after my mom came to the mud runs and got me, and told me that this had happened, I was hysterical and I kept saying that, I kept saying I want my mommy.
Transcript at 60-61.
At the conclusion of the hearing, the trial court, as memorialized in a Judgment Entry filed on August 21, 2000, found beyond a reasonable doubt that appellant had violated R.C. 4549.02. The trial court further found appellant to be a Juvenile Traffic Offender pursuant to R.C. 2151.021. Subsequently, pursuant to a Judgment Entry filed on October 10, 2000, the trial court imposed a $225.00 fine on appellant, and ordered that appellant work eighty hours in the Court's Work Program and pay court costs. The trial court also suspended appellant's driver's license until her 21st birthday.
It is from the trial court's August 21, 2000, and October 10, 2000, Judgment Entries that appellant prosecutes her appeal, raising the following assignment of error:
 THE DECISION OF THE TRIAL COURT ADJUDICATING APPELLANT A DELINQUENT CHILD FOR COMMITTING THE OFFENSE OF LEAVING THE SCENE OF AN ACCIDENT (R.C. 4549.02; R.C. 2151.021) WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 I
Appellant, in her sole assignment of error, argues that the trial court's finding, beyond a reasonable doubt, that appellant had violated R.C. 4549.02 by leaving the scene of an accident and that appellant, therefore, was a Juvenile Traffic Offender is against the manifest weight and sufficiency of the evidence.
In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 Jenks, supra, at paragraph two of the syllabus. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Martin (1983), 20 Ohio App.3d 172, 175. See also, State v.Thompkins (1997), 78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
As is stated above, the trial court found appellant to be a juvenile traffic offender by reason of having violated R.C. 4549.02 by leaving the scene of an accident. Upon consideration of the record, this Court finds that there was substantial, probative evidence presented from which a rational trier of fact could find beyond a reasonable doubt that appellant violated R.C. 4540.02. As is set forth in detail in the above statement of facts, Chris Adkins testified that he was hit by a "purplish" vehicle driven by a blonde woman. According to Chris, when the blonde woman exited the vehicle at the scene of the accident, he asked her to "go get my mom". The woman, however, then drove away. Jeanne Robinson, who arrived on the scene shortly after the accident, testified that Chris told her that he was struck by a vehicle driven by a woman with blonde hair.
It is undisputed that appellant, who has blonde hair, was operating a "purplish" vehicle on the day in question around the time and in the vicinity of the accident. Appellant testified at the hearing that, while she could not recall any accident, she recalled the voice of a boy calling for his mother. When the vehicle driven by appellant was located the same day, the vehicle had damage to the front fender that, according to appellant's stepfather, the owner of the vehicle, did not exist before the day of the accident. Trooper Argentine, when questioned about the damage to the vehicle, testified as follows:
 Q. And what evidence did you observe, if any, regarding the bike and the car themselves that would lead you to that conclusion, other than the statements?
 A. Well as far over as the bike was on the roadway, the vehicle had to have hit the bicycle on the left side because if not the vehicle, if it had hit anywhere else the vehicle would have been off the road.
 Q. Alright, and the damage to the bike and the damage to the vehicle that was operated by Miss Arth would they match?
A. Yes.
 Q. Okay, and that, would also fit in your opinion of what occurred in this accident?
A. Yes.
 Q. Was there any other evidence on either of these items that would also support that conclusion?
 A. The bicycle foot pedal had reddish purplish paint scrapes stuck in the pedal and the vehicle had scratch marks on the lower left side of the front fender.
 Q. And did the paint marks that you observed on the pedal match those of the vehicle?
A. It looked just like it, yes.
 Q. Alright. Do you have any doubt that the vehicle operated by Miss Arth on May 21 was the vehicle that in fact had collided with Chris Adkins and the bike?
A. No sir.
Transcript at 49-50.
In short, based upon our review, we find there was sufficient evidence, if believed, to find beyond a reasonable doubt that appellant violated R. C. 4549.02 by leaving the scene of an accident.
We further find that the trial court's adjudication of appellant as a juvenile traffic offender was not against the manifest weight of the evidence. While appellant denies that she was involved in the May 21, 2000, accident, the trial court, as trier of fact, was in the best position to assess all of the witnesses' credibility, including that of appellant. The trial court clearly found appellant's testimony that she either would have been unable to hear Chris calling for his mother at the scene of the accident or that she herself was the one who was calling for her mother unpersuasive. In fact, the trial court, prior to adjudicating appellant, specifically stated on the record that it was clear that appellant was "not being truthful" and that it found the trial a "charade". Transcript at 111-112.[3] We cannot find, therefore, that the trial court lost its way so as to create a manifest miscarriage of justice.
Based on the foregoing, appellant's sole assignment of error is overruled.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed. Costs to appellant.
Hon. Julie Edwards, P.J. Hon. John Wise, J. Hon. John Boggins, J. concurs.
[1] R.C. 4549.02 states, in part, as follows: In case of accident to or collision with persons or property upon any of the public roads or highways, due to the driving or operation thereon of any motor vehicle, the person so driving or operating such motor vehicle, having knowledge of such accident or collision, shall immediately stop his motor vehicle at the scene of the accident or collision and shall remain at the scene of such accident or collision until he has given his name and address and, if he is not the owner, the name and address of the owner of such motor vehicle, together with the registered number of such motor vehicle, to any person injured in such accident or collision or to the operator, occupant, owner, or attendant of any motor vehicle damaged in such accident or collision, or to any police officer at the scene of such accident or collision.
[2] R. C. 2151.021 defines a "juvenile traffic offender", in part as follows: "[a] child who violates any traffic law, traffic ordinance, or traffic regulation of this state, the United States, or any political subdivision of this state,. . . ."
[3] It is significant to note, as the trial court noted in its August 21, 2000, Judgment Entry, that appellant never actually denied the accident.